The People *ex rel.* State Public Utilities Commission, Petitioner, *vs.* The Chicago and Northwestern Railway Company, Defendant.

*Opinion filed October 27, 1915—Rehearing denied Dec. 10, 1915.*

1. Public utilities—*when commission is without jurisdiction to make order as to alleged discrimination.* Where the complaint by a shipper does not allege that the rate charged for the 90-mile haul of sand and gravel from his plant to Chicago is unreasonable, but only that he is unjustly discriminated against because the railroad company will not give him the same rate it charges shippers of sand and gravel from a zone extending from 38 to 55 miles from Chicago, the Public Utilities Commission has no power to make an order finding unjust discrimination and ordering the railroad company to extend its zone to include complainant's plant, but its only power is to begin suit against the company under the act of 1873.

2. Same—*act of 1873 covers the subject of unjust discrimination.* The act of 1873 (Laws of 1873, p. 135,) covers the subject

of unjust discrimination in railroad rates and provides for penalties to prevent public injury and an action to compensate the injured shipper, but in a prosecution under such act the defendant is entitled to a jury trial.

ORIGINAL petition for *mandamus.*

EVERETT JENNINGS, and COLIN C. H. FYFFE, for petitioner.

C. A. VILAS, and S. D. SCHOLES, (C. C. WRIGHT, and ROBERT H. WIDDICOMBE, of counsel,) for defendant.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The People of the State of Illinois, upon the relation of the State Public Utilities Commission, moved this court for leave to file a petition for *mandamus* commanding the Chicago and Northwestern Railway Company to comply with an order of the Railroad and Warehouse Commission, the predecessor of the State Public Utilities Commission, requiring the railway company to make the same charge for shipment of sand and gravel from Roscoe, Illinois, to Chicago as it charges for shipping sand and gravel from what is called the Fox river district. Leave was given and the petition was filed. The defendant having been served with process, appeared and demurred to the petition, and the cause was submitted for decision upon the demurrer.

The following facts are admitted by the demurrer: The defendant, the Chicago and Northwestern Railway Company, operates a railroad passing through the counties of McHenry, Winnebago, Kane, DuPage, Boone, DeKalb and Cook. Situated upon its railroad are the towns of Cary, Algonquin and Crystal Lake in McHenry county, Carpentersville and Elgin in Kane county and Roscoe in Winnebago county. At each of these towns there are plants from which sand and gravel are shipped to Chicago. The towns

of Cary, Algonquin, Crystal Lake, Carpentersville and El-
gin are situated between 38 and 55 miles from Chicago and
the town of Roscoe is about 90 miles from Chicago. The
defendant created what was called the Fox river district
for the towns between 38 and 55 miles, from which the
average haul was 46⅓ miles, and charged each shipper one
and a half cents per hundred, regardless of distance, but
charged for shipping sand and gravel from Roscoe, with a
haul of 90 miles, a rate of one and three-fourths cents per
hundred. On March 22, 1912, the Atwood-Davis Sand
Company filed its complaint with the Railroad and Ware-
house Commission, alleging that it was engaged in the pro-
duction and shipment of washed sand and gravel from its
plant situated about four miles north of the town of Ros-
coe, and that the defendant unjustly discriminated against
it by excluding its plant from the sand and gravel zone
known as the Fox river district and charging higher ship-
ping rates than the rate charged to the shippers located in
the Fox river district. The defendant answered, admitting
that it was a common carrier and that the complainant was
engaged in the business stated, but alleged that a fair dif-
ferential in rates on account of the distance would be not
less than half a cent per hundred pounds and that the rate
was not unfair or discriminatory against the complainant.
The commission, after hearing evidence, entered an order
finding, as matters of fact, that the Atwood-Davis Sand
Company owned a plant for producing washed sand and
gravel between Roscoe and South Beloit, about 90 miles
from Chicago; that its product was disposed of on the
Chicago market, and without such market it would prob-
ably be unable to operate; that its capacity was about forty
cars per day from spring until cold weather; that other
plants of a similar character were located on the line of
the defendant's road at Cary, Crystal Lake, Algonquin, El-
gin and Carpentersville, located from 38 to 55 miles from
Chicago; that the defendant had formed a group or zone

covering said plants located from 38 to 55 miles from Chicago in which it charged each shipper the same rate to Chicago, and that the defendant had formed other zones for the shipment of various other products, such as soft coal, ice, lime and lumber, within which it established the same shipping rate for distances varying from 30 to 100 miles, such zones being much greater than the Fox river district or zone. The complaint did not allege that the rate charged to the complainant was unreasonable, but the charge was that there was discrimination against the complainant by excluding its plant and product from the sand and gravel shipping zone known as the Fox river district. The order recited that the commission was not asked and was not assuming to make any rate or any schedule of rates or to change any rate then in effect, and did not determine the power of the defendant to fix zones or the same rate for varying distances and did not consider any question of long or short haul but assumed it to be proper for the defendant to create the zone. The commission held that inasmuch as the defendant had made a number of zones or groups, varying in distance from 30 to 100 miles, in which the same shipping rate for other products than sand and gravel was charged, the refusal to place the complainant in the Fox river district constituted unjust discrimination against it and its product, and the commission therefore ordered the defendant to extend the Fox river district to include the plant and product of the defendant at whatever rate then was or might thereafter be fixed for the Fox river district. The defendant appealed to the circuit court of Sangamon county, where the order was affirmed, but the defendant refused to comply with the order and claimed that the commission had no jurisdiction to make it.

The question submitted for decision is whether the Railroad and Warehouse Commission had jurisdiction to compel the defendant to extend the Fox river district from

its limit of 55 miles from Chicago to include Roscoe, 90 miles from Chicago, to prevent what the commission found to be an unjust discrimination against the Atwood-Davis Sand Company in reaching a common market for sand and gravel, and the question must be determined from the statutes conferring power upon the commission and prescribing the manner of its exercise.

The Railroad and Warehouse Commission was established by the act of 1871, providing for the appointment of the commissioners. (Laws of 1871-72, p. 618.) By that act the commission was authorized to fix reasonable maximum rates and charges for the transportation of persons and property by rail. In 1873 another act was passed for the declared purpose of preventing extortion and unjust discrimination in the rates charged for transportation of passengers and freight and to punish the same and prescribe a mode of procedure and rules of evidence in relation thereto. (Laws of 1873, p. 135.) Section 2 of that act provided that if any railroad corporation should make any unjust discrimination in its rates or charges for the transportation of passengers or freight it should be deemed guilty of having violated the provisions of the act and upon conviction thereof should be dealt with as therein provided. The act imposed heavy penalties for unjust discrimination, increasing with each subsequent offense. Section 7 required the Railroad and Warehouse Commissioners personally to investigate and ascertain whether the provisions of the act were violated, and if in their judgment the facts warranted prosecution it was made their duty immediately to cause suits to be commenced and prosecuted against any railroad corporation which might violate the provisions of the act. Section 8 provided that the commission should make schedules of reasonable maximum rates and charges for the transportation of passengers and freight, and in all suits brought against railroad corporations involving unjust discrimination the schedules should be taken as *prima facie*

evidence that the rates therein fixed were reasonable. The act of 1871 was amended in 1911, (Laws of 1911, p. 471,) and as amended it provided that the commission should make a schedule of reasonable maximum rates and charges for the transportation of persons and property, and section 25 declared it to be unlawful for any common carrier to charge or receive any greater compensation for a shorter than for a longer distance over the same line, but authorized the commission to permit the common carrier to charge less for longer than for shorter distances and to prescribe the extent to which the common carrier might be relieved from the operation of that section.

The act establishing the Railroad and Warehouse Commission conferred jurisdiction over all common carriers within the State and authorized the commission to establish reasonable rates for the transportation of persons and property. (*Railroad and Warehouse Com.* v. *Vandalia Railroad Co.* 258 Ill. 397.) So far as rates were concerned, the only authority given was to establish reasonable maximum rates, but no power was given to prevent discrimination between different shippers by any order of the commission. Section 25, as amended in 1911, provided that upon application of the common carrier the commission might in special cases, after investigation, permit the carrier to charge less for longer than shorter distances and prescribe the extent to which the carrier should be relieved from the prohibition against an equal or greater charge for a shorter than a longer distance. It was under a similar statute that the carriers applied to the Inter-State Commerce Commission to be relieved from the short and long-haul provision, and the commission somewhat modified zones already established and granted the application as so modified. The order was under review in the *Inter-Mountain Rate Cases,* 234 U. S. 476, and was sustained. That case gives no support to the argument that the Railroad and Warehouse Commission had jurisdiction to make

the order in this case, not on the application of the carrier for relief, but on the petition of a shipper. By the act of 1873 extortion and unjust discrimination were prohibited, and it was declared that a charge of the same or a greater amount for a short haul than for a longer haul should be *prima facie* evidence of an unjust discrimination. The act also provided that damages might be recovered by a shipper from a railroad corporation guilty of any unjust discrimination, together with costs and attorney's fees. The commission had no power to make the order in question under the act of 1871, since there was no complaint that the established rate from Roscoe to Chicago was unreasonable. The order did not fix any rate from the complainant's plant at Roscoe to Chicago and did not raise the Fox river rate to a level with the rate from Roscoe but found that the exclusion of the product of the complainant from the Fox river district was unjust. Under the order the defendant might have raised the rates in the Fox river district or lowered the rate from Roscoe, but the order of the commission was that they should be on a level. The complaint was based on the differential in the haul from the Fox river district and the haul from Roscoe, and the only authority of the commission in such a case was to commence and prosecute a suit for the unjust discrimination. The act of 1873 covered the subject of unjust discrimination and provided penalties to prevent the public injury and an action to compensate the injured shipper with three times the amount of actual damage suffered. In a prosecution or action there was a right to a jury trial, and it would not be reasonable to say that the General Assembly intended, by any general language in the other act, to deprive the carrier of a jury trial and permit the commission to decide whether the carrier had violated the act of 1873. The commission had no jurisdiction to make the order.

The writ of *mandamus* is denied.          *Writ denied.*